■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL DI NOIA and ROBERT RAPETTI, Appellants. — Appeals by defendants from two judgments (one as to each of them) of the Supreme Court, Westchester County (Miller, J.), both rendered December 2, 1983, convicting each of them of two counts of rape in the third degree, after a nonjury trial, and imposing sentence.

Judgments affirmed and matter remitted to the Supreme Court, Westchester County, for further proceedings pursuant to CPL 460.50 (subd 5).

Appellants were accused of engaging in sexual intercourse with a female who was incapable of consent due to being mentally incapacitated (see Penal Law, § 130.25, subd 1; § 130.05, subd 3, par [c]). Subdivision 6 of section 130.00 of the Penal Law provides: " 'Mentally incapacitated' means that a person is rendered temporarily incapable of appraising or controlling [her] conduct owing to the influence of a narcotic or intoxicating substance administered to [her] without [her] consent, or to any other act committed upon [her] without [her] consent".

Counts five through eight of the indictment utilized identical language in accusing appellants and two codefendants as follows:

"THE GRAND JURY OF THE COUNTY OF WESTCHESTER, by this Indictment, accuse the defendants of the crime of RAPE IN THE THIRD DEGREE, committed as follows:

"The defendants, in the County of Westchester and State of New York, on or about March 20, 1982, each aiding and abetting the other and acting in concert, being males, engaged in sexual intercourse with a female, to wit, [the named victim] who was incapable of consent by reason of a factor other than being less than seventeen years old, to wit, mentally incapacitated".

On this appeal, appellants Di Noia and Rapetti challenge the sufficiency of the indictment, arguing that its language was too vague and that the bills of particulars failed to sufficiently amplify the indictment.

At the onset, it should be noted that the proper way in which to challenge the facial validity of an indictment is via a pretrial motion to dismiss (CPL 210.20, 210.25). When not timely raised, the issue is not preserved for appellate review (*People v Soto,* 44 NY2d 683; *People v Iannone,* 45 NY2d 589, 600). As appellant Di Noia did not raise this issue in his pretrial omnibus motion, he has not preserved it for this court's review (CPL 255.20, 210.20, subd 2). Appellant Rapetti has preserved the issue by his pretrial motion.

When indicting for statutory crimes, it is usually sufficient to charge the language of the statute unless that language is too broad (*People v Iannone, supra*). The basic function of an indictment is to advise the defendants of the crime of which they are accused; an indictment is sufficient if it charges each and every element of the crime and alleges that the defendants committed the acts at a specified place during a specified time period (*People v Iannone, supra*). In the case at bar, the indictment advised appellants of each and every element of the crime of rape in the third degree, the date of the crime, the name of the victim, and the factor which rendered the victim incapable of giving her consent: mental incapacitation. The bills of particulars furnished by the People specified the exact locale and approximate time (the Yonkers Motor Inn between midnight and 2:00 A.M.) of the crime, and reiterated that each defendant, while aiding and abetting and acting in concert with his codefendants, had sexual intercourse with the victim while she was mentally incapacitated. Thus, we conclude that the indictment, especially as amplified by the bills of particulars, met the *Iannone* standard (*People v Iannone, supra,* p 597).

As to the nature of the victim's mental incapacity, the bills of particulars noted that: "[v]ictim was rendered to a state of unconsciousness or semi-consciousness during which she was

unable to walk, appraise the situation clearly, speak properly, and control her movements without assistance".

Appellants argue that the People failed to spell out in the bills of particulars, and failed to prove at trial, the exact nature of the substance which rendered the victim mentally incapacitated. The People accurately note, that since the nature of the crime involves surreptitious conduct, it will often be difficult to conclusively establish the precise substance utilized. Thus, the People's burden was only to establish that the victim's mental incapacity was caused by "a narcotic or intoxicating substance" (Penal Law, § 130.00, subd 6) and thus, there was no requirement that the indictment or bills of particulars spell out the precise substance utilized.

There was ample proof that the victim had indeed been rendered "mentally incapacitated". Appellant Rapetti, in the presence of appellant Di Noia, admitted to witness Crosson, approximately three days before the incident, that he wanted to drug the victim and "take her out and gang bang her". Di Noia, in Rapetti's presence, told witness Bernardi that he had a date with the victim and planned that the two of them would get "wasted". On the night of the incident, appellant Di Noia told Crosson in Rapetti's presence that the pills in a box on his dashboard were quaaludes.

There was testimony of the victim as to how she went with appellants to the "Hoops" disco on the evening of March 19, 1982. She drank a few 7-Ups which the appellants had previously had access to when the victim briefly left their table. She then found herself entering into a semiconscious state.

Appellants brought her to a motel room. Several witnesses testified to the victim's motionless and semiconscious state while appellants had sexual intercourse with her. The hotel maids testified that the victim was carried out, unconscious, over the shoulder of one of a group of males. One maid identified defendant Rapetti as being in this group. Finally, the victim's father and sister offered their testimony of their observations of the victim's drugged state when she was (literally) dropped off at her home.

Thus, the "mental incapacitation" element was established beyond a reasonable doubt. Further evidence of appellants' involvement was furnished by the victim, who stated that she had heard appellants' voices in the motel room and had heard Rapetti state "[r]oll over" after which she felt pain.

Appellants' claim that there was no proof that they administered a narcotic or intoxicating substance would be irrelevant

even if it were true. The relevant statutes dealing with this offense (Penal Law, § 130.25, subd 1; § 130.00, subd 6) do not require the People to establish *who* administered the substance. Thus, "[i]t is immaterial that the defendant did not administer, or cause to be administered, the narcotic or intoxicating substance to the victim. It is enough that it was administered by someone without the victim's consent" (Hechtman, Practice Commentaries, McKinney's Cons Laws of NY, Book 39, Penal Law, § 130.00, p 448).

We have considered such other of appellants' arguments as have been preserved for our review, including the claimed excessiveness of their sentences, and find them to be lacking in merit. Mangano, J. P., Gibbons, O'Connor and Brown, JJ., concur.